UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| JOSEPH CARSON,<br><br>                              Petitioner,<br><br>        v.<br><br>T. McGUINNESS,<br><br>                              Respondent. | No. 23-CV-6776 (KMK)<br><br>ORDER ADOPTING REPORT &<br>RECOMMENDATION |

KENNETH M. KARAS, District Judge:

Joseph Carson ("Petitioner"), pro se, filed a Petition for a Writ of Habeas Corpus

("Petition") pursuant to 28 U.S.C. § 2254, challenging his conviction and sentence.  (Dkt. No. 1.)

Before the Court are Petitioner's Objections to Magistrate Judge Judith C. McCarthy's Report

and Recommendation ("R&R").  (*See* Pet'r's Objs. to R&R ("Obj.") (Dkt. No. 30).)  After

reviewing the R&R and Petitioner's Objections, the Court adopts the result recommended in the

R&R and denies the Petition.

### I.  Background

The factual and procedural background of this case is set forth in Judge McCarthy's

thorough R&R and the Court assumes the Parties' familiarity therewith.  (*See Carson v.*

*McGuinness*, No. 23-CV-6776, 2024 WL 5469225, at *1–4 (S.D.N.Y. Aug. 28, 2024)

(hereinafter "R&R"); *see also* Report & Recommendation 2–4 (Dkt. No. 24).)  The Court here

summarizes the facts relevant to addressing Petitioner's Objections to the R&R.

A.  Factual Background

Petitioner sold narcotics to undercover police officers on October 30 and November 9,

2018.  (Aff. of Andrew Kass in Opp'n ¶¶ 1–3 (Dkt. No. 12).)  Police then searched Petitioner's

residence on December 7, 2018, finding narcotics, associated paraphernalia, and $7,400 in cash. (*Id.* ¶ 2.)  On December 18, 2018, Petitioner was indicted on three counts of Criminal Possession of a Controlled Substance in the Fourth Degree.  (Mem. of Law in Opp'n, Ex. 13-1, at 2–3 (Dkt. No. 13).)  On April 22, 2019, the State filed a separate indictment for the controlled buys it conducted in October and November of 2018, charging Petitioner with three counts of Criminal Sale of a Controlled Substance in the Third Degree, and three counts of Criminal Possession of a Controlled Substance in the Third Degree.  (*Id.* at 10–11).  In a superseding indictment on September 9, 2019, the state added numerous other counts relating to drug possession, sale, and use of drug paraphernalia.  (*Id.* at 17–24.)  As part of a plea agreement, Petitioner pleaded guilty to two counts of Attempted Criminal Sale of a Controlled Substance in the Third Degree and waived his right to appeal his convictions and sentence in exchange for the dismissal of the remaining counts of the superseding indictment and a favorable sentencing recommendation. (Aff. of Andrew Kass in Opp'n ¶¶ 4–5 (Dkt. No. 12).)

At a January 27, 2020 hearing, the State affirmed it would "recommend 7 years in state prison along with 3 years of post-release supervision" at sentencing.  (Mem. of Law in Opp'n, Ex. 13-3, at 3 (Dkt. No. 13).)  The trial court informed Petitioner it was prepared to "cap [its] sentence at 5 years in state prison to be followed by 2 years of post-release supervision" and would be willing to consider a lower sentence depending on the contents of Petitioner's Presentence Investigation Report.  (*Id.* at 4.)  The trial court informed Petitioner that his guilty plea waived certain rights, including his "right to appeal and . . . some discovery rights."  (*Id.* at 5.)  When asked if he would still like to plead guilty, Petitioner responded, "[y]es."  (*Id.*; *see also id.* at 12–13.)  The court also advised Petitioner that the appellate waiver in his plea agreement did not mean he could not take an appeal—rather, Petitioner would "giv[e] up the right to have

2

the appellate court consider most claims of error and whether the sentence . . . is excessive and should be modified." (*Id.* at 13.)  Petitioner again affirmed he had consulted with his lawyer and understood.  (*Id.*)  The trial court then explained the conditions of Petitioner's plea agreement:

> First, you must appear for your meeting with the probation department concerning your Presentence Investigation Report.  You must cooperate with the probation department, which includes being truthful with them about the facts and circumstances of your cases.  You must stay out of trouble and not get re-arrested on any other matter or commit any crimes while you are out pending sentence. . . . You must also come to court on the date of your sentence or any other date that [the judge] schedule[s] on your case.

(*Id.* at 19.)  The trial court then asked Petitioner if he understood that failure to follow any condition would release the trial court from its sentencing promise, and Petitioner would not be allowed to withdraw his guilty plea and appellate waiver. (*Id.* at 19–20.)  Petitioner responded "[y]es."  (*Id.*)

Petitioner failed to appear for his sentencing on October 30, 2020, and a bench warrant was issued for his arrest.  (Mem. of Law in Opp'n, Ex. 13-1, at 82 (Dkt. No. 13).)  On December 23, 2020, Petitioner was arrested and remanded to the custody of the State pending sentencing and updates to his Presentence Investigation Report.  (Aff. of Andrew Kass in Opp'n ¶ 6 (Dkt. No. 12).)   In February 2021, the State notified the trial court that Petitioner was arrested in violation of the conditions of the plea agreement while awaiting sentencing.  (Mem. of Law in Opp'n, Ex. 13-2, at 48 (Dkt. No. 13).)  Subsequently, the State informed the trial court that it would seek consecutive, not concurrent, sentences.  (*Id.* at 50.)  At the sentencing hearing on July 29, 2021, the trial court noted Petitioner's prior failure to appear at his sentencing hearing or his second Pre-Sentence Investigation interview, and his arrests while awaiting sentencing. (Mem. of Law in Opp'n, Ex. 13-4, at 4–6 (Dkt. No. 13).)  The trial court held a hearing to assess whether there was a sufficient evidentiary basis for Petitioner's arrest that the court could

conclude he violated his plea agreement and impose an enhanced sentence. (*Id.* at 4–6.). In the hearing, the State proffered evidence that Petitioner's arrests stemmed from numerous "criminal and traffic offenses." (*Id.* at 7.) A probation officer testified that she "attempted to conduct a presentence investigation interview in the jail with the defendant" but that he "refused to . . . cooperate with the interview" and did not return the probation office's questionnaire. (*Id.* at 9.) Petitioner claimed he "[did not] recall" receiving a phone call or a letter from the probation department for an interview. (*Id.* at 18.) Further, Petitioner argued there was no basis to prove the conduct underlying his Bergen County arrest. (*Id.* at 12-13.)

Petitioner explained he was absent from the first sentencing hearing because his mother died that day, a fact which he claimed he relayed to his probation officer. (*Id.* at 15.) As to his failure to appear after he was notified of the bench warrant, Petitioner blamed the COVID-19 pandemic and his belief that the court threatened him "with 108 years" of imprisonment. (*Id.* at 16.) The trial court responded that the State advised Petitioner previously of the sentence it would seek if he was convicted and sentenced on each count, which was less than 108 years. (*Id.* at 17.) Petitioner also informed the trial court that while awaiting sentencing he "ran by [his counsel] . . . to withdraw [his guilty] plea," and wanted "to continue litigating [his] case." (*Id.* at 17.) The trial court responded that "when [Petitioner] plead[ed] guilty the litigation [was] over" and that he was "fully allocated on the record," then continued discussing Petitioner's sentencing. (*Id.* at 17–18.) After hearing evidence, the trial court found a "reasonable basis to believe" Petitioner had been arrested on at least two occasions while awaiting sentencing, and that he failed to cooperate with the probation department. (*Id.* at 21.) The trial court then sentenced Petitioner to consecutive nine-year terms of imprisonment on each count of Attempted Criminal Sale of a Controlled Substance in the third degree. (*Id.*)

B.  Procedural History

    1.  Direct Appeal

Petitioner appealed his sentence in state court on July 9, 2022, arguing: (1) his appellate waiver was not made knowingly, intelligently, and voluntarily because the trial court failed to advise him "of the distinction between the waiver of his right to appeal and other rights automatically forfeited" when pleading guilty; (2) the trial court erred in imposing an enhanced sentence because it did not have a reasonable basis to believe he violated his no-arrest plea condition; and (3) his sentence was excessive and unconstitutional.  (Mem. of Law in Opp'n, Ex. 13-2, at 18–26 (Dkt. No. 13).)

The Supreme Court of the State of New York, Appellate Division, Second Judicial Department (the "Second Department") held Petitioner's argument "that the enhanced sentence imposed was excessive [was] not foreclosed by [his] [appellate waiver], since [he] was not advised during the plea proceeding of the maximum sentence that could be imposed if he failed to comply with the conditions of" the trial court's "sentencing promise."  *People v. Carson*, 182 N.Y.S.3d 250, 252 (App. Div. 2023).  The Second Department accordingly reduced Petitioner's sentence "to concurrent determinate terms of imprisonment of 7 years" and "a period of postrelease supervision of 3 years, on each count."  *Id.*  As for Petitioner's argument that the trial court "did not have a sufficient basis on which to impose an enhanced sentence," the Second Department held "this claim [was] not precluded by his waiver of the right to appeal" but that it was "partially unpreserved for appellate review and . . . without merit."  *Id.* at 252.  Finally, the Second Department held Petitioner's "remaining contention" raising constitutional claims "[was] unpreserved for appellate review" and therefore declined to reach the argument.  *Id.*  Petitioner

5

sought leave to appeal the Second Department's decision to the New York Court of Appeals, which was denied on April 27, 2023. *People v. Carson*, 209 N.E.3d 1278 (N.Y. 2023).[1]

### 2. Habeas Petition

On July 25, 2023, Petitioner filed this Petition. (Dkt. No. 1.) The State filed its opposition on December 22, 2023. (*See* Mem. of Law in Opp'n (Dkt. No. 13).) Petitioner filed his Reply on January 16, 2024. (Dkt. No. 15.) Judge McCarthy directed the State to submit a response to new arguments Petitioner raised in in his Reply, which the State filed on August 9, 2024. (Dkt. No. 18; Dkt. No. 23.) Judge McCarthy issued her R&R on August 28, 2024, recommending this Court deny Petitioner's request for relief and dismiss the Petition in its entirety. (*Carson*, 2024 WL 5469225, at *1.) Following an extension, Petitioner filed his Objections on December 18, 2024. (Obj.)

## II. Discussion

## A. Standard of Review

### 1. Review of a Magistrate Judge's Report and Recommendation

A district court reviewing a magistrate judge's report and recommendation addressing a dispositive motion "may accept, reject, or modify, in whole or in part, the findings or recommendations made by [a] magistrate judge." 28 U.S.C. § 636(b)(1). Under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), a party may submit objections to the report and recommendation. The objections must be "specific" and "written," Fed. R. Civ. P. 72(b)(2), and must be made "[w]ithin [fourteen] days after being served with a copy of the

---

[1] As of September 29, 2025, Petitioner is now out of prison on temporary release. Notice of Change of Address (Dkt. No. 37). Because his conditional temporary release effects "continuing collateral consequences" of his conviction notwithstanding his "now-ended incarceration," Petitioner still has standing to bring this habeas petition. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998).

recommended disposition," *id.*; *see also* 28 U.S.C. § 636(b)(1), plus an additional three days when service is made pursuant to Federal Rules of Civil Procedure 5(b)(2)(C)–(F), *see* Fed. R. Civ. P. 6(d), for a total of seventeen days, *see* Fed. R. Civ. P. 6(a)(1).

Where a party submits timely objections to a report and recommendation, as Petitioner has, the Court reviews de novo the parts of the report and recommendation to which the party objected. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). The district court "may adopt those portions of the . . . report [and recommendation] to which no 'specific written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *Eisenberg v. New Eng. Motor Freight, Inc.*, 564 F. Supp. 2d 224, 226 (S.D.N.Y. 2008) (quoting Fed. R. Civ. P. 72(b)(2)).

Finally, pleadings submitted by pro se litigants are held to a less strict standard than those drafted by attorneys. *See Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) ("Even in the formal litigation context, pro se litigants are held to a lesser standard than other parties." (italics omitted)). Because Petitioner is proceeding pro se, the Court construes his pleadings "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (italics and quotation marks omitted). However, this "does not exempt a [pro se litigant] from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (quotation marks and citation omitted).

2. Habeas Corpus Standard of Review

Petitions for writs of habeas corpus are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides that a state prisoner may seek habeas corpus relief in federal court "on the ground that he is in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a). "The writ may not issue for any claim

adjudicated on the merits by a state court unless the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States,' or was 'based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.'" *Epps v. Poole*, 687 F.3d 46, 50 (2d Cir. 2012) (quoting 28 U.S.C. § 2254(d)(1)–(2)); *see also Brims v. Collado*, No. 18-CV-6973, 2022 WL 6807545, at *5 (S.D.N.Y. Oct. 11, 2022) (applying the same standard of law). In this context, "it is the habeas applicant's burden to show that the state court applied [federal law] to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("The petitioner carries the burden of proof."); *Gantt v. Miller*, No. 19-CV-2910, 2023 WL 6200870, at *7 (S.D.N.Y. July 28, 2023) ("[E]ven if a state court decision is contrary to . . . federal law, the petitioner still carries the ultimate burden . . . ." (quotation marks omitted)).

A decision is "contrary to" clearly established Federal law if (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2) "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *see also Bowie v. Lee*, No. 13-CV-7317, 2021 WL 6127048, at *8 (S.D.N.Y. Dec. 28, 2021) (using the same principle). A decision is "an unreasonable application of clearly established Federal law" if, for instance, a state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Williams*, 529 U.S. at 407–08 (alterations adopted) (quotation marks omitted); *see also May v. Griffin*, No. 17-CV-6319, 2021 WL 5450346, at *7 (S.D.N.Y. Nov. 19, 2021) (applying the same standard of law). "Clearly established Federal law for purposes of

8

[Section] 2254(d)(1) includes only the holdings, as opposed to the dicta, of th[e Supreme] Court's decisions.  And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice."  *White v. Woodall*, 572 U.S. 415, 419 (2014) (alteration adopted) (quotation marks and citations omitted); *see also id.* at 420 (holding a petitioner must show a state court ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair[-]minded disagreement" (quotation marks omitted)); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.").

"Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."  *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (quotation marks omitted). Consequently, a federal court must deny a habeas petition in some circumstances even if the court would have reached a conclusion different than the one reached by the state court, because "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id.* at 102; *see also Cullen*, 563 U.S. at 202–03 ("Even if the [Federal] Court of Appeals might have reached a different conclusion as an initial matter, it was not an unreasonable application of our precedent for the [state court] to conclude that [the petitioner] did not establish prejudice."); *Hawthorne v. Schneiderman*, 695 F.3d 192, 197 (2d Cir. 2012) ("Although we might not have decided the issue in the way that the [New York State] Appellate Division did—and indeed we are troubled by the outcome we are constrained to reach—we . . . must defer to the determination made by the state court . . . ." (citations omitted)).

Additionally, under AEDPA, the factual findings of state courts are presumed correct. *See* 28 U.S.C. § 2254(e)(1); *Nelson v. Walker*, 121 F.3d 828, 833 (2d Cir. 1997) ("When reviewing a habeas petition, the factual findings of the New York Courts are presumed to be correct." (alteration adopted) (quotation marks omitted)). The petitioner must rebut this presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Cotto v. Herbert*, 331 F.3d 217, 233 (2d Cir. 2003) (stating that clear and convincing evidence is required to overcome the presumption that factual findings of state courts are correct).

Finally, only claims under federal law are cognizable in habeas proceedings. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *see also* 28 U.S.C. § 2254(a) ("The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.").

### 3. Procedural Requirements for Habeas Corpus Relief

"Habeas review is an extraordinary remedy," *Bousley v. United States*, 523 U.S. 614, 621 (1998), and a petitioner seeking a writ of habeas corpus must comply with the strict requirements of AEDPA, *see* 28 U.S.C. § 2254. Before the Court reviews the merits of a habeas corpus petition, the Court must determine whether Petitioner complied with the procedural requirements set forth in 28 U.S.C. §§ 2244 and 2254.

### a. Timeliness

AEDPA imposes upon a petitioner seeking federal habeas relief a one-year statute of limitations. *See* 28 U.S.C. § 2244(d)(1). The statute of limitations is tolled if any state post-conviction proceedings are pending after the conviction becomes final. *See* 28 U.S.C. § 2244(d)(2). The limitations period is also subject to equitable tolling, which is warranted only when a petitioner has shown "(1) that he [or she] has been pursuing his [or her] rights diligently, and (2) that some extraordinary circumstances . . . prevented timely filing." *Bowie v. Lee*, No. 13-CV-7317, 2021 WL 6127048, at *9 (S.D.N.Y. Dec. 28, 2021) (alterations in original) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)).

### b. Procedural Bar

A federal court "will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment." *Downs v. Lape*, 657 F.3d 97, 101 (2d Cir. 2011) (quotation marks omitted). A judgment is "independent" if the "last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989) (quotation marks omitted). A procedural bar is "adequate . . . if it is based on a rule that is firmly established and regularly followed by the state in question." *Monroe v. Kuhlman*, 433 F.3d 236, 241 (2d Cir. 2006) (quotation marks omitted). In "exceptional cases," the "exorbitant application of a generally sound [state procedural] rule renders the state ground inadequate to stop consideration of a federal question." *Lee v. Kemna*, 534 U.S. 362, 376 (2002).

c. Exhaustion

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citation and quotation marks omitted); *see also* 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State . . . ."). To satisfy this requirement, "the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin*, 541 U.S. at 29 (quotation marks omitted); *see also* 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the state . . . if he has the right under the law of the State to raise, by any available procedure, the question presented."). This requirement reflects important "notions of comity between the federal and State judicial systems." *Strogov v. Att'y Gen. of State of N.Y.*, 191 F.3d 188, 191 (2d Cir. 1999).

"A two-step analysis is used to determine whether a claim has been exhausted." *See McCray v. Bennet*, No. 02-CV-839, 2005 WL 3182051, at *7 (S.D.N.Y. Nov. 22, 2005). First, "a petitioner [must] fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011) (alterations adopted) (quotation marks omitted); *see also Gordon-Patterson v. Bedford Hills Corr. Facility*, No. 21-CV-4307, 2025 WL 2108548, at *3 (E.D.N.Y. July 28, 2025) ("[T]he petitioner must have fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts." (quoting

12

*Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981))).  This requirement is satisfied if the claim is presented in a way that is "likely to alert the [state] court[s] to the claim's federal nature," *Carvajal*, 633 F.3d at 104 (quoting *Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000)), and the state courts are "apprise[d] . . . of both the factual and the legal premises of the federal claims ultimately asserted in the habeas petition," *Galdamez v. Keane*, 394 F.3d 68, 73 (2d Cir. 2005).  In other words, a state prisoner need not cite "chapter and verse of the Constitution" to satisfy this requirement.  *Carvajal*, 633 F.3d at 104 (quotation marks omitted).  A petitioner may satisfy this requirement by:

> (a) reliance on pertinent federal cases employing constitutional analysis[;] (b) reliance on state cases employing constitutional analysis in like fact situations[;] (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution[;] and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Id.* (quotation marks omitted).  However, it is "not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made."  *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (citation omitted).  Rather, the claims must give the state courts a "fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim."  *Id.* (quotation marks omitted).

"Second, having presented his federal constitutional claim to an appropriate state court, and having been denied relief, the petitioner must have utilized all available mechanisms to secure [state] appellate review of the denial of that claim."  *Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981), *abrogated on other grounds*, *Daye v. Att'y Gen. of N.Y.*, 696 F.2d 186, 195 (2d Cir. 1982) (en banc).  In New York, a "defendant must first appeal his or her conviction to the Appellate Division, and then must seek further review of that conviction by applying to the Court of Appeals for a certificate granting leave to appeal."  *Galdamez*, 394 F.3d at 74.  If the

petitioner fails to exhaust available state remedies through the appeal process, the petitioner may still fulfill the exhaustion requirement by collaterally attacking the conviction via available state methods. *See Klein*, 667 F.2d at 282–83 (noting that, "where the petitioner did not utilize all the appellate procedures of the convicting state to present his claim . . . the petitioner must utilize available state remedies for collateral attack of his conviction in order to satisfy the exhaustion requirement"). For example, in New York, a defendant may challenge a conviction based on matters not in the record that could not have been raised on direct appeal, *see* N.Y. Crim. Proc. Law § 440.10, but a defendant may not seek collateral review of claims that could have been raised on direct appeal and were not, *see id.* § 440.10(2)(c); *O'Kane v. Kirkpatrick*, No. 09-CV-5167, 2011 WL 3809945, at *7 (S.D.N.Y. Feb. 15, 2011) ("Under New York law, all claims that are record-based must be raised in a direct appeal. . . . It is only when a defendant's claim hinges upon facts outside the trial record, that he may collaterally attack his conviction by bringing a claim under CPL § 440.10."), *report and recommendation adopted*, 2011 WL 3918158 (S.D.N.Y. Aug. 25, 2011). In addition, New York permits only one application for direct review. *See Jiminez v. Walker*, 458 F.3d 130, 149 (2d Cir. 2006) ("[The petitioner] has already taken his one direct appeal [under New York law.]"). "New York procedural rules bar its state courts from hearing either claims that could have been raised on direct appeal but were not, or claims that were initially raised on appeal but were not presented to the Court of Appeals." *Sparks v. Burge*, No. 06-CV-6965, 2012 WL 4479250, at *4 (S.D.N.Y. Sept. 28, 2012).

Accordingly, in those situations, a petitioner no longer has any available state court remedy, and the claims are therefore deemed unexhausted but procedurally defaulted. *See Carvajal*, 633 F.3d at 104 ("If a habeas applicant fails to exhaust state remedies by failing to adequately present his federal claim to the state courts so that the state courts would deem the

14

claim procedurally barred, we must deem the claim procedurally defaulted." (alteration adopted and quotation marks omitted)); *see also Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) (noting that, while a court can deem an unpresented claim exhausted, this practice is "cold comfort" in the face of the requirement that "federal habeas courts also must deem the claims procedurally defaulted"). A dismissal of a habeas petition on such grounds is a "disposition . . . on the merits." *Carvajal*, 633 F.3d at 104 (quotation marks omitted). "An applicant seeking habeas relief may escape dismissal on the merits of a procedurally defaulted claim only by demonstrating 'cause for the default and prejudice' or by showing that he is 'actually innocent' of the crime for which he was convicted." *Id.* (quoting *Aparicio*, 269 F.3d at 90); *see also Dretke v. Haley*, 541 U.S. 386, 388 (2004) (holding that "a federal court will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus absent a showing of a cause and prejudice to excuse the default," or showing that the petitioner "is actually innocent of the underlying offense").

4. Adequate and Independent State Grounds

"A federal habeas court will not review a claim rejected by a state court 'if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" *Walker v. Martin*, 562 U.S. 307, 315 (2011) (quoting *Beard v. Kindler*, 558 U.S. 53, 55 (2009)). "The state-law ground may be substantive or procedural." *Moreno-Gratini v. Sticht*, No. 19-CV-5964, 2022 WL 1425712, at *5 (S.D.N.Y. Apr. 18, 2022), *report and recommendation adopted*, 2022 WL 1423298 (S.D.N.Y. May 5, 2022); *see Jimenez v. Walker*, 458 F.3d 130, 138 (2d Cir. 2006) ("When the state court's decision rests on an independent procedural bar . . . a federal court must still determine whether that state procedural ground is adequate to support the judgment."). "Even where the state court has ruled on the

15

merits of a federal claim 'in the alternative,' federal habeas review is foreclosed where the state court has also expressly relied on the petitioner's procedural default." *Murden v. Artuz*, 497 F.3d 178, 191 (2d Cir. 2007) (quoting *Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005)).  Only if the state court's decision rests on an "independent procedural bar" that is "adequate to support the judgment" will federal habeas review be barred.  *Id.* at 191–92 (quoting in part *Jimenez*, 458 F.3d at 138).  "A state procedural bar is 'adequate' if it 'is firmly established and regularly followed by the state in question' in the 'specific circumstances presented in a case.'"  *Moreno-Gratini*, 2022 WL 1425712, at *6 (quoting *Monroe v. Kuhlman*, 433 F.3d 236, 241 (2d Cir. 2006) (internal citation omitted)).

B.  Analysis

Petitioner raised three grounds for habeas relief in his Petition: (1) the trial court failed to properly communicate the impact of the appellate waiver that was a part of his plea agreement; (2) the trial court violated Petitioner's right to due process because it did not have a sufficient basis to impose an enhanced sentence; and (3) Petitioner's sentence was unconstitutionally excessive.  (*See* Pet.)  Petitioner also argued in his later briefing that his sentencing judge was biased against him.  (Mem. of Law in Resp. to State's Opp'n 25 (Dkt. No. 15)).  Judge McCarthy recommended rejecting each argument and dismissing the Petition.

Petitioner's Objections focus on the first two of these arguments.  He contends that Judge McCarthy's recommendations were erroneous because (1) the report and recommendation erred in finding his appellate waiver was valid, because Judge McCarthy did not consider that he withdrew his guilty plea, preserving his appellate rights; and (2) the report and recommendation "distorted the facts" surrounding his plea conditions to conclude he violated the plea agreement.

(Obj. 2–18).  Because both objections are without merit, the Court adopts the conclusions of the R&R.

  1. Petitioner's Guilty Plea and Appellate Waiver

  Judge McCarthy concluded "Petitioner's challenge to the sufficiency of his waiver of his right to appeal his sentence" was "both moot and not cognizable on federal habeas review." (*Carson*, 2024 WL 5469225, at *9.)  Petitioner's core objection to this conclusion is that he "moved to withdraw his guilty plea *before* sentencing," which "preserve[d his] challenge to the validity of the plea on appeal" because his appellate waiver was part of his plea agreement. (Obj. 2–3.)  He also contends his challenge is cognizable on federal habeas review because the Second Department's decision on direct appeal was "not independent of the federal question, since state law relies on federal law to establish whether a guilty plea is valid."  (*Id.* at 6.)

  Petitioner's contention that he withdrew his plea was correctly rejected in the report and recommendation for several reasons.  First, Petitioner did not raise this argument on direct appeal in the Second Department.  *See Carson*, 182 N.Y.S.3d at 251–52.  (*See also Carson*, 2024 WL 5469225, at 10, n.10; Mem. of Law in Opp'n, Ex. 13-2, at 18–20 (Dkt. No. 13) (not arguing in his appellate briefing that Petitioner withdrew or moved to withdraw his plea).)  Accordingly, it is unexhausted and procedurally barred, and that posture alone is sufficient to reject this claim. *See Sanchez v. Lee*, No. 10-CV-7719, 2011 WL 924859, at *35 (S.D.N.Y. Mar. 16, 2011) ("The Supreme Court found this claim procedurally barred because [Petitioner] failed to challenge the validity of his plea on direct appeal.") (citing *Bousley v. United States*, 523 U.S. 614, 621 (1998)), *report and recommendation adopted*, 2011 WL 3477314 (S.D.N.Y. Aug. 8, 2011) *aff'd*, 508 F. App'x 46 (2d Cir. 2013); *Olaya-Rodriguez v. United States*, No. 02-CV-4153, 2003 WL 21219854, at *6 (S.D.N.Y. May 23, 2003) ("Finally, appellate counsel did not raise this

argument on direct appeal, and Petitioner's late attempt to withdraw his guilty plea is therefore procedurally barred.").

Second, whether Petitioner's plea was withdrawn does not present a question of federal law reviewable in a § 2254 habeas petition.  It is true that "the governing standard as to whether a plea of guilty is voluntary for the purposes of the federal Constitution is a question of federal law."  *Marshall v. Lonberger*, 459 U.S. 422, 431 (1983).  But whether a guilty plea *voluntarily entered and accepted* can then be *withdrawn* is a question of *state* law that this Court is unable to review on this posture, because there is no federal right to withdraw such a plea.  *See, e.g.*, *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997) ("[I]t is basic that a defendant has no absolute right to withdraw his guilty plea." (internal quotation marks omitted)); *Martuzas v. Reynolds*, 983 F. Supp. 87, 94 (N.D.N.Y. 1997) ("Ordinarily, a state judge's denial of a motion to withdraw a guilty plea is not subject to habeas corpus review, unless such plea was not entered intelligently or voluntarily." (citing *United States ex rel. Irving v. Henderson*, 371 F. Supp. 1266, 1276–77 (S.D.N.Y. 1974), and *Brady v. United States*, 397 U.S. 742, 755 (1970))); *Tinsley v. Woods*, No. 08-CV-1332, 2011 WL 3251527, at *8 (S.D.N.Y. June 16, 2011) ("[T]here is no constitutional right to withdraw a constitutionally valid guilty plea."), *report and recommendation adopted*, 2011 WL 4472468 (S.D.N.Y. Sept. 28, 2011).  And Petitioner does not argue his original guilty plea was not entered knowingly and voluntarily.  Moreover, any argument in his Petition that his appellate waiver was not knowing and voluntary, (*see* Pet. 5 (Dkt. No. 1)), was moot for federal habeas review because the Second Department granted him the relief he sought on that argument by hearing his appeal of his sentence and reducing it.  *Carson*, 182 N.Y.S. 3d at 250 (holding Petitioner's "contention that the enhanced sentence imposed was excessive is not foreclosed by [his appellate waiver], since [he] was not advised

during the plea proceeding of the maximum sentence that could be imposed if he failed to comply with the conditions of the County Court's sentencing promise" and reducing his sentence); *see also Paul v. Ercole*, No. 07-CV-9462, 2010 WL 2899645, at *7 (S.D.N.Y. June 10, 2010) (holding some of a petitioner's claims were "moot because the Appellate Division has already granted petitioner the relief he was seeking on those claims"), *report and recommendation adopted*, 2010 WL 2884720 (S.D.N.Y. July 21, 2010).  Accordingly, this Court does not see how the state court's decision to deny Petitioner's motion to withdraw his plea (assuming such a motion was made) could have been "interwoven with federal law."  (Obj. 6.[2])

Finally, Petitioner argues in his Objections that the Report and Recommendation failed to apply *People v. Williams*, in which the New York Court of Appeals held "[w]hen a defendant pleads guilty to a crime, he or she must generally move to withdraw the plea or otherwise object to its entry prior to the imposition of sentence to preserve a challenge to the validity of the plea for appellate review."  51 N.E.3d 528, 530 (N.Y. 2016).  *Williams*, as he contends, stands for the proposition that his "challenge to the validity of [his] plea [was] *preserved* when [he] move[d] to withdraw the plea."  (Obj. 5 (emphasis in original).)  But even assuming Petitioner is right that he moved to withdraw the plea before sentencing, that would have preserved his challenge to his guilty plea for *state* appellate review—but because he did not challenge his guilty plea in front of the Second Department, he did not preserve that challenge for *federal* habeas review.  *See Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991) (holding claims a petitioner raised in a lower state

---

[2] To the extent Petitioner argues his guilty plea was involuntary in violation of the Due Process Clause because the sentencing court erroneously found he did not meet the conditions of his plea agreement, that argument is discussed and rejected *infra* Part II(B)(2), because this Court must defer to the sentencing court's factual findings that Petitioner did violate those conditions.  *See Lynn v. Bliden*, 443 F.3d 238, 246 (2d Cir. 2006) ("[A] state court's findings of fact 'will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.'" (citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

court but did not present to the higher appellate court were not preserved for federal habeas review).

Accordingly, this Court sees no error in the Report and Recommendation's conclusion that Petitioner's "challenge to the sufficiency of his right to appeal his sentence," which was part of his plea agreement, was "moot and not cognizable on federal habeas review." *Carson*, 2024 WL 5469225, at *9.

### 2. Trial Court's Enhanced Sentence

Next, Petitioner argues the Report and Recommendation erroneously concluded the trial court did not "violate[] the Due Process Clause by imposing an enhanced sentence" after the trial court found he breached the conditions of his guilty plea. (Obj. 8–17.) *Carson*, 2024 WL 5469225, at *13. The three conditions were that Petitioner must (1) appear for his Presentence Investigation Report and cooperate with probation officers; (2) not be arrested or commit any other crimes while awaiting his sentencing; (3) appear in court on the date of his sentencing or for any other hearing. (Obj. 9.) Petitioner contends he did not breach the first condition because it did not apply to his *second* Presentence Investigation Report; he did not breach the second condition because there was insufficient evidence of his arrests; and he did not breach the third condition because, although he failed to appear at his sentencing, he did so because his counsel did not inform him of the sentencing date. (*Id.* 9–15.) Accordingly, he clams his enhanced sentence was based on a broken sentencing promise by the trial court in violation of the Due Process Clause.

As a threshold matter, the Report and Recommendation concluded Petitioner's claims were barred from federal habeas review because they were rejected by the Second Department on an independent and adequate state procedural ground. The Second Department held

20

Petitioner's contention "that the [trial] [c]ourt did not have a sufficient basis on which to impose an enhanced sentence" was "partially unpreserved for appellate review and, in any event, without merit." *Carson*, 182 N.Y.S.3d at 252. The report and recommendation found Petitioner's objections to the enhanced sentence were accordingly barred because they relied on preservation, which is a state procedural rule that is independent and adequate to bar review of unpreserved arguments. (*Carson*, 2024 WL 5469225, at *9 (citing, inter alia, *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810 n.4 (2d Cir. 2000) ("We note that we have held that where a state court says that a claim is 'not preserved for appellate review' and then ruled 'in any event' on the merits, such a claim is not preserved.") (quoting *Glenn v. Bartlett*, 98 F.3d 721, 724–25 (2d Cir. 1996)).) Petitioner objects that the "phrase, 'partially unpreserved,' created ambiguity that is not a cognizable procedural bar." (Obj. 7 (citing *Hylton v. Ercole*, No. 05-CV-4077, 2010 WL 2594744, at *9 (E.D.N.Y. 2010) ("[T]he phrase 'partially unpreserved' creates ambiguity as to which part of [Petitioner's] . . . challenge rests on an adequate and independent state ground. Because of this ambiguity, district courts this circuit generally find that no procedural bar arises from such a disposition[.]").) The Court agrees. "[B]ecause the Appellate Division did not 'clearly and expressly' state that its judgment rested solely on a State procedural bar," and failed to explain which arguments against Petitioner's enhanced sentence were preserved (and to what extent they were preserved), the Court must "assume that there is no adequate and independent state ground that addresses [Petitioner's] claims." *McCaskell v. Keane*, No. 97-CV-2999, 2001 WL 840331, at *14 (S.D.N.Y. July 26, 2001) *report and recommendation adopted*, Order (Dkt. No. 33), No. 97-CV-2999 (S.D.N.Y. Oct. 15, 2001). Accordingly, the Court agrees with Petitioner that his contentions as to his enhanced sentence are not procedurally barred for this reason.

Two of Petitioner's claims—that he did not violate the first or third condition of his plea agreement—are nevertheless defaulted because he did not raise them in the trial court or on appeal before the Second Department, and accordingly did not exhaust them. (*See* Mem. of Law in Opp'n, Ex. 13-2, at 20–24 (Dkt. No. 13) (contesting only the trial court's determination that Petitioner violated the arrest condition).) *See also Acosta v. Giambruno*, 326 F. Supp. 2d 513, 519 (S.D.N.Y. 2004) ("[A] habeas petitioner must have fairly presented to the state courts the substance of his federal habeas corpus claim." (quotation marks omitted)).

Accordingly, this Court reaches the merits of Petitioner's argument only as to the trial court's determination that he violated the arrest condition. The Second Department's conclusion that Petitioner "violated the conditions imposed at the plea proceeding were supported by sufficient reliable and accurate information" and the trial court's conclusion that Petitioner was arrested while awaiting sentencing are entitled to deference. *Carson*, 182 N.Y.S.3d at 252 (quotation marks omitted); *see Deboue v. Girdich*, No. 04-CV-0119, 2005 WL 1377949, at *4 (E.D.N.Y. June 9, 2005) ("In a habeas action brought by a person in custody pursuant to a state court judgment, a state court's determination of factual issues is presumed to be correct. Where there is a dispute as to a defendant's alleged breach of a plea agreement, the determination of whether a defendant has in fact breached a plea agreement is a finding of fact to be decided by the trial judge after a hearing on the issue." (internal citation omitted) (citing 28 U.S.C. § 2254(e)(1) and *United States v. Calabrese*, 645 F.2d 1379, 1390 (10th Cir. 1981))). This Court must therefore defer to the state court's finding that Petitioner violated his plea agreement even if this Court "might disagree about the finding in question," *Wood v. Allen*, 558 U.S. 290, 301 (2010), unless Petitioner can show by "clear and convincing evidence" the state court erred, *Herbert*, 331 F.3d at 233 (quotation marks omitted). He has not made the requisite showing.

22

Petitioner contends there was not enough evidence to find he breached the arrest condition of his plea agreement, because "no arresting officer testified to the legitimate basis of" his arrests. (Obj. 12.)  But federal law imposes no such requirement. *See United States v. Chung*, 71 F. Supp. 2d 66, 69 (N.D.N.Y. 1999) ("As long as the information which the sentencing judge considers has sufficient indicia of reliability to support its probable accuracy, the information may properly be taken into account in passing sentence.").  And to the extent Petitioner argues *New York* law imposes this requirement, that argument is not cognizable on federal habeas review.[3]  Rather, on federal habeas review, this Court asks only whether Petitioner has presented clear and convincing evidence that the trial court's findings were erroneous.  *See Herbert*, 331 F.3d at 233 ("Under 28 U.S.C. § 2254(e)(1), the fact-findings of the trial court are subject to a presumption of correctness . . . . On habeas review, the petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence." (internal citations and quotation marks omitted)).  Petitioner does not contest the validity of any of the evidence of his arrests (nor did he in the sentencing hearing or on appeal) except his arrest in Bergen County, to which he objected during his sentencing hearing and which the trial court therefore did not consider in determining Petitioner violated the plea agreement.  (Mem. of Law in Opp'n, Ex. 13-4, at 19–21 (Dkt. No. 13).)  The evidence the state proffered in support of Petitioner's arrest in Wallkill included "traffic tickets," an "incident report," and "supplemental reports from the Town of Wallkill Police Department," and the proffered evidence for Petitioner's arrest by New York State police included an arrest warrant.  (*Id.* at 10, 20; Mem. of Law in Opp'n, Ex. 13-2, at 90–96).)  The trial court's finding that he breached this condition is

---

[3] Further, New York law requires only that the sentencing court "be satisfied . . . of the existence of a legitimate basis for the arrest," *People v. Outley*, 610 N.E.2d 356, 361 (N.Y 1993), and does not impose this type of hard-and-fast requirement.

likewise accordingly not "objectively unreasonable," and thus entitled to AEDPA deference. *Lynn v. Bliden*, 443 F.3d 238, 246 (2d Cir. 2006) (quotation marks omitted).

This Court therefore adopts the Report and Recommendation's conclusion that the trial court did not violate the Due Process Clause by imposing an enhanced sentence. *Carson*, 2024 WL 5469225, at *13.

### 3. Remaining Recommendations

Petitioner does not object to Judge McCarthy's recommendations on two of his other claims—that there was judicial bias in the state court, and that his enhanced sentence was excessive. This Court "may adopt those portions of the . . . report [and recommendation] to which 'no specific written objection is made,'" absent clear error. *Eisenberg*, 564 F. Supp. 2d at 226 (quoting Fed. R. Civ. P. 72(b)(2)). Finding no substantive error, clear or otherwise, this Court adopts Judge McCarthy's recommendation on these two issues.

### III. Conclusion

For the foregoing reasons, the Court adopts the R&R's conclusions and denies Petitioner's objections. The Clerk of Court is respectfully directed to mail a copy of this order to Petitioner.

SO ORDERED.

Dated:    December 10, 2025
          White Plains, New York

_____
KENNETH M. KARAS
United States District Judge

24